fore final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case, * * *". The plaintiff contends that the removal to this court was improper since, while there is diversity of citizenship, the matter in controversy does not exceed the sum or value of $3,000, as required by section 1332 of Title 28, U.S.Code.

The defendant, in opposing the motion, contends that the claim sued under herein is one of hundreds of claims resulting from a fire and explosion which took place on its pier on December 3, 1956, that actions aggregating millions of dollars have been commenced against it in both the federal and state courts, and, consequently, that the amount in suit far exceeds the sum of $3,000 required by § 1332, supra. In support of its position the defendant has cited the case of Yuba Consolidated Gold Fields v. Kilkeary, 9 Cir., 206 F.2d 884, 886, in which the court discussed the removal of claims of $3,000 or less to the federal court for trial in a consolidated action. There, the plaintiff, whose position was comparable to that of the defendant herein, brought a suit in equity in the nature of a "bill of peace", in which it sought a determination in one action of its liability for damages to hundreds of claimants, caused by floods of the Yuba River in California. That case is inapposite since no comparable action has been commenced herein.

The defendant argues, further, that there are federal statutes involved herein. I need not consider that point since there would still be absent the requirement of Section 1331 of Title 28, U.S. Code, relating to actions involving federal statutes, that the matter in controversy *exceed* the sum of $3,000.

Accordingly, the plaintiff's motion to remand the case to the Municipal Court of the City of New York, Borough of Queens, Second District, is granted.

In view of this decision it is unnecessary, to pass upon defendant's motion to consolidate and for a stay.

The **PENNSYLVANIA RAILROAD COMPANY**

v.

The **UNITED STATES.**

No. 121-52.

United States Court of Claims
Oct. 9, 1957.

James S. Cremins, Norfolk, Va., Paul F. McArdle, Washington, D. C., on the briefs, for plaintiff.

Pauline B. Heller, Washington, D. C., George Cochran Doub, Asst. Atty. Gen., Paris T. Houston, Washington, D. C., on the brief, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER and MADDEN, Judges.

LITTLETON, Judge.

Plaintiff, a common carrier by railroad of passengers and freight, brought this suit to recover the amount of $3,474.90 representing the unpaid portion of charges that plaintiff made against defendant for the transportation of 24 shipments of freight in 1947. Defendant by answer admits the allegations of plaintiff's petition with respect to these 24 shipments but denies that there is any balance due plaintiff, or that plaintiff is entitled to recover any amount from defendant for the reason that there is due defendant by counterclaim the sum of $3,474.90.

Defendant's counterclaim is based on the alleged loss by plaintiff's connecting carrier of 33 bags of khaki cotton shirts belonging to defendant which were shipped from Wilkes-Barre, Pennsylvania, to the defendant's Charlotte Quartermaster Depot at Charlotte, North Carolina, in January of 1947. This shipment predates and is unrelated to the 24 shipments upon which plaintiff has brought suit.

The 33 bags having been delivered to plaintiff at Wilkes-Barre moved to Richmond, Virginia, in a car belonging to plaintiff. At Richmond they were transferred to the Seaboard Air Line Railroad Company, the connecting carrier, and moved by that line to Charlotte, North Carolina, where they arrived on January 15, 1947. Upon arrival there they were unloaded and placed in a Seaboard warehouse, and on January 17, were loaded along with other items by Seaboard personnel in a Seaboard car and the car sealed. On January 18, 1947, this car moved from the Seaboard warehouse in Charlotte to the Charlotte Quartermaster Depot, a distance of approximately four miles. On January 20 defendant's personnel at the depot broke the seals on the doors and unloaded the contents of the car. On a blank form provided for that purpose, there being no shipping documents in the car, the person in charge of the unloading made a tally listing U. S. Quartermaster Corps numbers appearing on the bales, packages and bags unloaded from the car. The numbers on the 33 bags of shirts involved here were not listed on that tally.

The tally sheet that had been prepared at the time of the unloading was checked several days later against the arrival notice that the Charlotte Quartermaster Depot had received from Seaboard. That notice had been mailed by Seaboard to the Charlotte Quartermaster Depot on January 17. It was then noted that the tally sheet did not contain any information relative to the bags of shirts. Thereupon, an unsuccessful effort was made by depot personnel to locate the shirts. Some three weeks later, a more thorough but still unsuccessful effort was made by depot personnel to locate the shirts following which defendant submitted to plaintiff a claim in the amount of $3,474.90 for the alleged loss of the shirts. Upon the rejection of the claim by plaintiff, defendant in November 1947 deducted that sum in making payment on plaintiff's bill covering the shipments which are the subject of plaintiff's petition. It is now admitted by defendant that this sum exceeds the actual value of the shirts by $1,724.98.

Both parties in their briefs and arguments make much of the question as to just who has the burden of proof, and both rely on our decision in Central of Georgia Railway Co. v. United States, 129 Ct.Cl. 278, where a situation somewhat like the present one was presented. There, while noting the lack of any authority directly in point, the court said

"If a carrier elects, for reasons of economy, to have no agent present at the unloading, and if the consignee makes an admittedly honest and apparently accurate count of the goods unloaded, which count shows a shortage, the carrier has the burden of persuading the trier of fact that the consignee's count was inaccurate. We think no other rule would be consistent with the carrier's legal position as an insurer subject only to narrow exceptions."

In holding for the Government we found in that case that "an admittedly honest and accurate count" had been made by the Government, as consignee, and the plaintiff railroad had failed to persuade us to *disbelieve or doubt* that count. Here defendant's evidence is certainly sufficient to support the *prima facie* showing or presumption of non-delivery. However we hold that presumption to have been rebutted in the light of the evidence presented by plaintiff, and on a consideration of all the evidence, we conclude, as did the commissioner of this court who conducted the trial and heard the witnesses, that the "inference is warranted that the shirts were in car T & P 60982 [loaded by the Railroad's employees at Charlotte] when it arrived at the Charlotte Quartermaster Depot."

In the Central of Georgia case, supra, the Government produced as evidence the actual tally sheet prepared in the unloading of the car while here although testimony was presented in support of the assertion that such a tally had been made, no such tally sheet could be produced. Defendant's evidence as to the count was supplied by the testimony of the individual who was in charge of the unloading of the car and who is alleged to have prepared the tally sheet, but whose recollection of the incident, by his own admission, had been made quite vague by the passage of nine years. Although unable to remember anything with respect to the unloading, he was able, with reference to a statement made by him one year after the incident, to refresh his memory sufficiently to recall that he was the checker who supervised the unloading of the subject car, and that the tally sheet which he prepared did not list any of the 33 bags of shirts. He did not take part in the later searches which were made at the depot, and since he did not have the shipping documents in his possession he did not know at the time he completed the unloading and checking that there was a supposed shortage in the shipment. Defendant's other evidence is composed of the testimony and documents relative to the subsequent searches made at the depot in unsuccessful efforts to locate the shirts.

Opposing this is evidence by plaintiff through the testimony of the individual who was in charge of the loading of the car at the Charlotte warehouse of Seaboard, testifying in part from records he made at the time, that the 33 bags of shirts were placed in the car, and the car doors sealed almost immediately thereafter. That testimony is corroborated by the testimony of another individual, a railroad policeman, who was present in the warehouse at Charlotte at the time these bags of shirts were being handled and whose attention had been directed to them in particular because of the damaged condition of a few of the bags of the now missing group. Also as part of plaintiff's evidence are the warehouse records made at the time which record the removal of the bags of shirts from the warehouse and their loading into the car.

While there is present in the record of this case direct evidence to the effect that the bags arrived at Charlotte, North Carolina, were unloaded and stored in a Seaboard warehouse, and were later removed from that warehouse and placed in a sealed car for transportation to the Quartermaster Depot in Charlotte, there is no direct evidence relative to the bags after that. But it is agreed that the seal on the car had not been broken.

During the period involved here, numerous consignments of these shirts packed in bags were shipped by railroad from Wilkes-Barre, Pennsylvania, to the Quartermaster Depot at Charlotte. At the Army depot the bags were opened, and the shirts were inspected and classified. After the shirts had been taken from the bags, they could no longer be identified as having been received at the depot in a particular shipment. If the missing shirts had been placed in the warehouse at the depot without proper recordation and removed from their bags shortly thereafter, this would account for the fact that the later searches proved to be unsuccessful in locating them.

The records maintained at the Atlanta General Depot, Atlanta, Georgia, covering additions to and withdrawals from the supplies at Charlotte lend support to the inference that the bags were received at the Charlotte Army Depot. These records, there being no records kept at the Charlotte depot, showed that an overage from the Charlotte depot was reported on October 27, 1947, of approximately the same quantity and type of shirts as contained in the bags involved here.

We are of the opinion from the record here that plaintiff is entitled to recover and judgment will be entered for plaintiff in the sum of $3,474.90. Defendant's counterclaim will be dismissed.

It is so ordered.

JONES, Chief Judge, and MADDEN and WHITAKER, Judges, concur.

LARAMORE, Judge, took no part in the consideration and decision of this case.

UPPER CHEHALIS TRIBE, Lower Chehalis Tribe, Chehalis Tribe, Satsop Tribe, Humptulip Tribe, Hoquiam Tribe, Confederated Tribes of the Chehalis Reservation and Portions and Descendants of Such Tribes and Bands, Ralph A. Heck, Frank F. Pete and Murphy Seneca as Individual Members of the Chehalis Tribe and Individually and On Behalf of All Other Members of the Chehalis Tribe and Subordinate Bands Not Members of the Confederated Tribes of the Chehalis Reservation,

v.

The UNITED STATES.

Appeal No. 1–56.

United States Court of Claims.

Oct. 9, 1957.